IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(Northern Division)

| | | |
|---|---|---|
| **MILLENNIUM INORGANIC CHEMICALS LTD.** | * | |
| c/o Millennium Inorganic Chemicals Inc. | * | Case No. _____ |
|    20 Wight Avenue | | |
|    Hunt Valley, Maryland 21030; and | * | |
| | * | **JURY TRIAL DEMANDED** |
| **CRISTAL INORGANIC CHEMICALS LIMITED** | * | |
| c/o Millennium Inorganic Chemicals Inc. | | |
|    20 Wight Avenue | * | |
|    Hunt Valley, Maryland 21030 | | |
| | * | |
| v. | | |
| | * | |
| **AMERICAN HOME ASSURANCE COMPANY** | * | |
|    <u>Serve</u>: MD Insurance Commissioner | | |
|       200 St. Paul Place, Ste. 2700 | * | |
|       Baltimore, MD 21202 | | |

## COMPLAINT

Plaintiffs, Millennium Inorganic Chemicals Ltd. and Cristal Inorganic Chemicals Limited (collectively "Millennium"), by undersigned counsel, hereby sue Defendant, American Home Assurance Company ("American Home"), and state:

### Nature of Action

1. This Complaint is for declaratory relief, breach of contract, and bad faith arising out of, and in connection with, an insurance policy purchased by Millennium from American Home.

### The Parties

2. Plaintiff Millennium Inorganic Chemicals Ltd. is a corporation organized under the laws of Australia with offices located at Lot 4 Old Coast Road, Australind 6233, Western Australia.

3.   Plaintiff Cristal Inorganic Chemicals Limited is a corporation organized under the laws of the Cayman Islands with offices c/o Appleby Trust (Cayman) Ltd., Clifton House, 75 Fort Street, P.O. Box 1350, Grand Cayman KY1-1108, Grand Cayman.

4.   Upon information and belief, Defendant American Home is a corporation organized under the laws of the State of New York with its principal place of business at 175 Water Street, 18th Floor, New York, NY 10038.  American Home is engaged in the property and casualty insurance business and regularly transacts business in the State of Maryland.

**Jurisdiction and Venue**

5.   This Court has jurisdiction over this action pursuant to 28 U.S.C. §1332, because the matter in controversy involves a dispute between citizens of a State and citizens or subjects of a foreign state, and the amount in controversy, exclusive of interest and costs, exceeds $75,000.

6.   Venue is proper in this Court pursuant to 28 U.S.C. §1391, because the Defendant resides in this state and this judicial district; and a substantial part of the events giving rise to this Complaint occurred in this district.

**Factual Background**

A.   **Millennium's Business Operations**

7.   Millennium, in conjunction with various affiliates, is the second largest global producer of titanium dioxide, which is a white pigment used in the manufacturing of a range of products such as coatings (*e.g*. paint), plastics, and paper.

8.   Among its global manufacturing facilities, Millennium operates two inter-dependent plants for the production and finishing of titanium dioxide near Bunbury, Western Australia (the "Bunbury Operations").  These plants are Millennium's only manufacturing facilities in the Asia Pacific region.

9. Natural gas is the main source of energy for the Bunbury Operations and is also used as a material for, among other things, process heating, steam generation, and drying in the manufacturing process.

10. There are various "producers" of natural gas in Western Australia, such as Apache Corporation (through a joint-venture with Santos (bol) Pty. Ltd.) (collectively referred to hereinafter as "Apache"), Arc Energy and Origin Energy (collectively, the "Producers").

11. Producers provide natural gas to an inlet flange of the Dampier to Bunbury Natural Gas Pipeline (the "DBNGP"), which is Western Australia's principal gas transmission pipeline, and runs approximately 1,000 miles from the Burrup Peninsula near Dampier to Bunbury.

12. Natural gas delivered by Producers to the inlet flange of the DBNGP is delivered to retail and commercial customers by DBP Transmission, the pipeline owner/operator, under the direction of "Shippers" who have contracted capacity in the DBNGP.

13. Specifically with respect to Millennium, the natural gas used at the Bunbury Operations is transported from the gas fields off the Australian coast through a transfer facility owned and operated by Apache on Varanus Island (approximately 70 miles off the Northwest coast of Australia), into and through the DBNGP and then directly to Millennium's Bunbury Operations.

14. Apache is the only Producer of natural gas from Varanus Island and is an indispensable party with respect to the supply of natural gas for Millennium's Bunbury Operations.

15. Millennium is unable to purchase gas from Apache, since capacity on the DBNGP is full. Instead, Millennium must rely on a Shipper to facilitate the shipment of gas from Apache to its Bunbury Operations. Since there is no additional capacity on the DBNGP, Millennium

cannot become a Shipper and therefore is wholly reliant upon other parties to provide gas "shipping" services.

16. Alinta Sales Limited ("Alinta"), one of the several Shippers operating in Western Australia, facilitates the shipment and transfer of natural gas from Apache to Millennium's Bunbury Operations.

17. Acting solely in its role as a Shipper of natural gas, Alinta does not own any gas production facilities, but merely facilitates the transfer of natural gas from Apache to Millennium.

18. Pursuant to a long-term "take-or-pay" contract originally executed in December 1997 with Millennium, Alinta facilitates the transfer to Millennium's Bunbury Operations of a specified amount of natural gas delivered by Apache to the inlet flange of the DBNGP.

19. Apache's continuous, uninterrupted supply of natural gas to Millennium is essential to the Bunbury Operations.

### B.  The Millennium 2008 - 2009 Property Insurance Program

20. In May of 2008, Millennium's insurance broker, Marsh USA Inc. ("Marsh"), placed a property insurance program (the "2008-2009 Property Program") to insure Millennium operations around the world, including the Bunbury Operations.

21. Specifically regarding the Bunbury Operations, the 2008-2009 Property Program was comprised of at least three insurance policies: (i) an American Home Industrial Special Risks Insurance Policy with policy no. 0000131935 (the "Local Policy");[1] (ii) a National Union Fire Insurance Company of Pittsburgh, PA 'All Risk' Property and Machinery Breakdown Policy with policy no.: 263 27 29 (the "National Union Master Policy"); and (iii) an Ace American

---

[1] Attached as *Exhibit A* and incorporated herein by reference.

Insurance Company ("Ace") 'All Risk' Property and Machinery Breakdown Policy with policy no.: PGL N05058077 (the "Ace Master Policy").

22. The Local Policy was issued by American Home, and the National Union Master Policy was issued by National Union.  Both insurers are affiliated with, and are part of, the AIG family of insurance companies (the "AIG Insurers").

23. Millennium paid a substantial premium to the AIG Insurers and Ace for the coverage provided by the 2008-2009 Property Program.

### C. The Varanus Island Explosion and Millennium's Loss

24. On June 3, 2008, a massive explosion at the Apache facility on Varanus Island resulted in interruption of approximately 30% of the total gas supply to Western Australia (the "Explosion").  As a result, remaining natural gas supplies were prioritized for domestic use and to essential industry and services.

25. Immediately after the Explosion, Apache issued a Notice of *Force Majeure* Event dated June 3, 2008 stating that Apache was unable to supply gas for Alinta to ship to Millennium's Bunbury Operations.

26. Alinta subsequently issued a *Force Majeure* notice advising that its facilitation of gas shipments to the Bunbury Operations would be terminated due to shortages.

27. As a result, production of titanium dioxide at Millennium's Bunbury Operations was immediately ceased.

28. Although operations were gradually resumed, the interruption of deliveries of gas to the Bunbury Operations caused Millennium to incur total losses in excess of $10 million (the "Bunbury Loss").

29. Millennium, through Marsh and with Marsh's assistance and counsel, promptly notified the AIG Insurers and Ace of the Bunbury Loss in compliance with any and all relevant provisions in the policies that make up the 2008-2009 Property Program.

**D.     The Local Policy**

   **(i)     Millennium's Receipt of the Policy**

30.  Millennium did not receive a copy of any of the policies that comprise the 2008-2009 Property Program until after the AIG Insurers and Ace were put on notice, through Marsh, of the Bunbury Loss.

31.  The Local Policy was not even issued by the AIG Insurers until sometime on or around September 12, 2008, more than three months after the Explosion.

   **(ii)     The Coverage Afforded by the Policy**

32.  Millennium purchased the 2008-2009 Property Program, including the Local Policy, to insure Millennium's worldwide operations for all risks, including the risks associated with the supply of natural gas on which it relied for its Bunbury Operations, and without which, the Bunbury Operations could not operate, and which risk was known to Millennium's insurers and its broker.

33.  The Local Policy provides aggregate limits totaling the Australian Dollar equivalent of US$100,000,000 per occurrence.

34.  Specifically, among the broad areas of coverage provided for by the 2008-2009 Property Program, the Local Policy provides, among other coverages, a "Public Utilities Extension" which insures Millennium for a loss of the type incurred as a result of the explosion.

35.  The National Union Master Policy and the Ace Master Policy, in turn, also provide certain "utilities" coverage and also certain "contingent business interruption" coverage.

36. Although the Local Policy does not include any coverage provisions setting forth the terms and conditions of "contingent business interruption" coverage, it does include certain limits of liability for such coverage.

37. The "utilities" and "contingent business interruption" coverage referenced above are part of what is sometimes referred to as the contingent time element coverage afforded under the 2008-2009 Property Program.

38. Millennium purchased the contingent time element coverage in the 2008-2009 Property Program to protect against losses such as the Bunbury Loss.

### E. The AIG Insurers Wrongful Denial of Coverage

39. The AIG Insurers, through their designated representatives, have denied coverage to Millennium under the 2008-2009 Property Program for the Bunbury loss.

40. By letter dated July 31, 2008, more than two months before even issuing the Local Policy, the AIG Insurers denied coverage to Millennium for the Bunbury loss.

41. After issuing the denial letter, the representatives of the AIG Insurers made it clear to representatives of Millennium that the Bunbury Loss would be covered under the 2008-2009 Property Program if Millennium could simply show that a "direct" relationship existed between Millennium and Apache, which the AIG Insurers claimed was required under the National Union Master Policy and the Ace Master Policy.

42. Thereafter, Millennium undertook a substantial effort to gather information responsive to the AIG Insurers' specific advice that coverage would be afforded upon Millennium providing evidence regarding its relationship with Apache.

43. In December 2008, as a result of its efforts, Millennium timely submitted a detailed Proof of Loss/Claim Submission to the AIG Insurers in which Millennium explained and documented, among other things, its relationship with Apache.

44. By letter dated February 3, 2009, however, the AIG Insurers once again denied coverage to Millennium for the Bunbury loss.

45. On July 17, 2009, Millennium filed a complaint in this Court (1:09-cv-01893-ELH) naming National Union, Ace, and Marsh as defendants and alleging, among other things, that the grounds for denial lacked a valid basis (the "Master Policy Litigation").

46. Through discovery taken in the Master Policy Litigation, which is still pending, AIG Insurer witnesses have conceded that coverage for the Bunbury Loss is available not only under provisions of the Master Policy portion of the 2008-2009 Property Program, as the AIG Insurers originally claimed, but also under the provisions of the Local Policy portion of the program, namely through the Public Utilities Extension of the Local Policy.

47. Upon learning of this concession regarding the Local Policy, counsel for Millennium promptly requested that National Union and Ace consent to Millennium filing an amended complaint in the Master Policy Litigation so as to add American Home as a defendant and to include claims for coverage against American Home under the Local Policy.

48. National Union and Ace denied Millennium's request and this Complaint was filed to preserve Millennium's claims.

49. Coverage exists for the Bunbury loss under the 2008-2009 Property Program, including under the Local Policy, as testified to by AIG Insurer witnesses in the Master Policy Litigation.

50. The AIG Insurers have failed to adjust the Bunbury Loss claim under the 2008-2009 Property Program in a diligent and good faith manner.

## Count I
### DECLARATORY JUDGMENT

51. Millennium reasserts and realleges the allegations contained in paragraphs 1 through 50 above and incorporates those allegations by reference as if set forth fully herein.

52. Millennium has given proper notice to American Home regarding the Bunbury Loss and maintains that coverage exists under the Local Policy for the full amount of the Bunbury Loss.

53. The AIG Insurers denied coverage under the 2008-2009 Property Program on various, inconsistent grounds, and have failed and refused to reimburse Millennium for Millennium's incurred losses in connection with the Bunbury Loss.

54. The denial of coverage has no basis in law or fact.

55. There exists an actual controversy of a practicable issue between Millennium, on the one hand, and American Home, on the other hand, within the jurisdiction of this Court involving the rights and liabilities of the parties under contracts of insurance, which controversy may be determined by a judgment of this Court.

WHEREFORE, Plaintiff Millennium demands:

  A. That this Court determine and adjudicate the rights and liabilities of the parties with respect to the Local Policy.

  B. That this Court find and declare that Defendant American Home is liable, to Plaintiff Millennium for the full amount of the Bunbury Loss, and enter judgment in favor of Millennium for the same, plus pre- and post-judgment interest.

C. That this Court award to Millennium its attorneys' fees and costs with respect to these proceedings.

## Count II
## BREACH OF CONTRACT

56. Millennium reasserts and realleges the allegations contained in paragraphs 1 through 55 above and incorporates those allegations by reference as if set forth fully herein.

57. American Home breached the Local Policy by refusing to pay amounts due to Millennium under the policy and arising from the Bunbury Loss.

58. As a result of American Home's breach of the Local Policy, Millennium has suffered direct and consequential damages.

WHEREFORE, Plaintiff Millennium requests that this Court enter a money judgment in favor of it for actual damages in an amount in excess of $10,000,000 to be proven at trial, plus pre-judgment and post-judgment interest, and any and all other costs and fees, and any and all other and further relief as justice and its cause require.

## Count III
## BAD FAITH

59. Millennium reasserts and realleges the allegations contained in paragraphs 1 through 58 above and incorporates those allegations by reference as if set forth fully herein.

60. The Local Policy is a commercial insurance policy, as defined in the Insurance Article of the Maryland Code.

61. The applicable limit of liability in the Local Policy, with respect to the Bunbury Loss claim, exceeds $10,000,000.

62. American Home breached the duty owed to its insured, Millennium, in failing to fulfill the obligations as set out in the Local Policy.

63. American Home was negligent in evaluating the Bunbury Loss claim and failed to exercise good faith and due care in protecting the interests of its insured, Millennium.

64. American Home acted in bad faith in evaluating and denying the Bunbury loss claim by failing to make an informed judgment based on honesty and diligence.

WHEREFORE, Plaintiff Millennium requests that this Court enter money judgment in favor of it for actual damages up to the applicable limits of the Local Policy; for expenses and litigation costs incurred by Millennium in connection with the Bunbury Loss claim and this action, including reasonable attorneys' fees; interest on all damages incurred by Millennium; any and all other costs and fees, and any and all other and further relief as justice and its cause require.

## JURY DEMAND

Millennium requests a trial by jury on all issues so triable.

Dated:  June 2, 2011                                       Respectfully submitted,

/s/
Gary C. Duvall (Bar No.: 1144)
Jeffrey P. Reilly (Bar No.: 5837)
MILES & STOCKBRIDGE P.C.
One West Pennsylvania Avenue, Suite 900
Towson, Maryland 21204
410.821-6565
410.385.3700 (f)
gduvall@milesstockbridge.com
jreilly@milesstockbridge.com

/s/
John C. Celeste (Bar No.: 26810)
Joseph L. Beavers (Bar No.: 27586)
MILES & STOCKBRIDGE P.C.
10 Light Street

        Baltimore, Maryland 21202
        410.727.6464
        410.385.3700 (f)
        jceleste@milesstockbridge.com
        jbeavers@milesstockbridge.com

        *Attorneys for Plaintiffs*